IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JIMMY CICHOCKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| JUDGE JOEL L. GREENBLATT; | ) | |
| KIMBERLY M. FOXX, Office of Cook County | ) | |
| State's Attorney; ORLANDO CARRENO; | ) | |
| JASON POJE; DONALD J. COSLEY; | ) | |
| LYNN T. PALAC; and SONG GAO, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

NOW COMES Plaintiff, JIMMY CICHOCKI, by his attorney, LAW OFFICE OF PHYLLIS PRICE, and complaining of JUDGE JOEL L. GREENBLATT, KIMBERLY M. FOXX (OFFICE OF COOK COUNTY STATE'S ATTORNEY), Assistant State's Attorney ORLANDO CARRENO, Assistant State's Attorney JASON POJE, DONALD J. COSLEY, LYNN T. PALAC, and SONG GAO, alleges as follows:

### Introduction

1.   In October 2017 and continuing thereafter, the above-named Defendants engaged in a conspiracy to deprive Plaintiff, Jimmy Cichocki, of his parental rights and to frame him for felony kidnapping and child abduction.  As a result of the Defendants' actions, Mr. Cichocki in November 2017, had his two-year-old daughter forcefully taken from his arms, and spent 90 days of

his life jailed in Oklahoma before being extradited to Illinois on a governor's warrant and wrongfully convicted, fined and placed on probation in April 2018 for misdemeanor attempted child abduction -- a crime he did not commit.

2.   Plaintiff and the mother of his child, Stacy Geng, have since reconciled and are now co-parenting their daughter. Specifically, by the Fall of 2018, Plaintiff was able to resume unsupervised parenting time with his daughter and one year later, he and Ms. Geng closed the domestic relations case having resolved the allocation of their parental responsibilities.

3.   Plaintiff is now also seeking post-conviction relief in Cook County Circuit Court to establish his innocence of the crime for which he was wrongfully prosecuted and convinced by his attorney to plead guilty.

4.   Though Plaintiff has now regained his parental rights and responsibilities, he will never regain the lost months of freedom and horrible time wrongly incarcerated, and then being electronically monitored for two months with a painful ankle bracelet and unable to seek employment with a felony arrest record. He cannot reverse the experience of having deadly weapons pointed at him while his daughter was literally stolen from him by US Marshals.  Defendants' wrongful acts robbed Mr. Cichocki of his ability to protect his child from threats, nearly resulted in his child being removed from the country to China, and subjected him to unnecessary probation, fines and

financial penalties.  This lawsuit seeks redress for all of those injuries.

## Jurisdiction and Venue

5.   This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.

6.   This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.  Venue is proper under 28 U.S.C. § 1391(b).  The parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred here as well.

## The Parties

7.   Plaintiff Jimmy Cichocki is a 33 year-old resident of the City of Chicago.  At the time he was subjected to the malicious actions initiated by the Defendants, Plaintiff was a 30-year-old new father of a 23-month-old daughter with no significant criminal record.

8.   At all times relevant hereto, Defendant Judge Joel L. Greenblatt was a Cook County Circuit Court associate judge assigned to the Third Municipal District in Rolling Meadows, IL.

9.   Defendant Kimberly M. Foxx is an Illinois state official serving as the State's Attorney for Cook County, Illinois, which employs or employed the Defendant Orlando Carreno.

10.  At all times relevant hereto, Defendant Orlando Carreno was a Cook County Assistant State's Attorney who participated in a

domestic violence case on behalf of the People of the State of Illinois against Stacy Geng (the mother of Plaintiff's daughter), yet requested an Order in that case for Plaintiff to turn over his daughter to Ms. Geng's mother, Defendant Gao, which led to Plaintiff's wrongful conviction.

11.  At all times relevant hereto, Defendant Jason Poje was a Cook County Assistant State's Attorney who worked in Felony Review and approved a felony arrest warrant against Plaintiff without confirming probable cause to believe that Plaintiff had committed the offense of child abduction.

12.  At all times relevant hereto, Defendant Donald J. Cosley was an attorney with offices in Rolling Meadows, IL, who represented Ms. Geng in the domestic violence case against her, and who prepared the order that led to Plaintiff's wrongful conviction.

13.  At all times relevant hereto, Defendant Lynn T. Palac was an attorney with offices in Arlington Heights, IL, who represented Plaintiff in his criminal defense against child abduction charges, and was a former prosecutor with the Cook County State's Attorney's office.

14.  At all times relevant hereto, Defendant Song Gao was and is the maternal grandmother of the Plaintiff's daughter.

15.  All of the foregoing Defendants are sued in their individual capacities, and all acted under color of law and in

the scope of their employment in engaging in the actions alleged
in this Complaint.

**Background Allegations**

16.   In November 2015, Plaintiff's daughter, Eliana Lu Cichocki
("Eliana"), was born to Plaintiff's girlfriend, Stacy Geng
("Stacy"), and Plaintiff has acted as the primary caretaker of
Eliana handling the principal parental responsibilities for his
daughter for the majority of her life.

17.   Since Eliana's birth, whose birth certificate and Voluntary
Acknowledgment of Paternity the Plaintiff promptly signed, the
Plaintiff's parental rights have been challenged and targeted by
Stacy's mother, Defendant Gao.

18.   Shortly after Eliana's birth, Defendant Gao threatened on
more than one occasion to take Eliana (and Stacy) to China, away
from Plaintiff, and not return.

19.   Due to these threats from Defendant Gao, which Plaintiff
believed she was capable of carrying out as a person of means and
high level connections in China, Plaintiff filed in Cook County
Circuit Court and obtained against Defendant Gao (for himself and
Eliana) an emergency order of protection ("EOP") on August 24,
2017 (Case No. 2017 OP 30596), based on physical harm that
Defendant Gao had done to him (in near proximity to Eliana) a few
days previously.

20.   On the follow up date for the EOP on August 31, 2017,
before Defendant Judge Joel Greenblatt, Plaintiff requested the

EOP be extended and with Defendant Carreno's advocating on behalf of Defendant Gao in Plaintiff's civil order of protection, the EOP was vacated, without hearing any input from Plaintiff and based on the Defendant Carreno claiming without basis that the EOP could not continue.

21.  Because Plaintiff continued to believe that Eliana was at risk of being removed from the country by Defendant Gao, on that same day, August 31, 2017, Plaintiff filed and obtained another EOP against Defendant Gao (Case No. 2017 OP 30611), which had a follow-up date of September 19, 2017.

22.  Inexplicably, on information and belief based on a transcript obtained by Plaintiff, in Plaintiff's absence on September 5, 2017, Defendant Gao appeared before Judge Betar on the 2017 OP 30611 case and the EOP was terminated.

23.  When Plaintiff appeared on September 19th, however, the hearing on the EOP appeared to be continued to October 2, 2017, and Plaintiff received a Disposition Order on September 19, 2017 to that effect from the Court.

24.  On September 25, 2017, however, the Court issued a Disposition Order vacating the EOP, again without input from Plaintiff.

25.  Concurrently with these events, Stacy and Plaintiff were experiencing relationship problems, and Stacy was under a criminal order of protection after biting Plaintiff on August 22,

2017, and having been arrested and charged with domestic violence (Case No. 2017 DV 30580).

26.  Stacy's domestic violence charge placed Plaintiff as the sole parent with the physical care and possession of Eliana.

27.  Despite his best efforts, Plaintiff was not able to institute and maintain a protective order against Defendant Gao in Cook County, Illinois.

28.  With the threats from Defendant Gao about taking his daughter out of the country, and Plaintiff's struggles to maintain a protective order against Defendant Gao in the Illinois courts, Plaintiff left the State with Eliana in early October and went to Oklahoma where Plaintiff has relatives, with the intent to file for a protective order in Oklahoma against Defendant Gao.

29.  Once Plaintiff got to Oklahoma, Plaintiff sought assistance to file for a protective order against Defendant Gao in Pottawatomie County, Oklahoma, though Plaintiff returned to Illinois for the Cook County court hearing on Stacy's criminal order of protection on October 13, 2017.

**Defendants' Misconduct**

30.  Prior to Stacy's domestic violence case coming up before the judge, Plaintiff confirmed with Defendant Carreno that Plaintiff had returned from Oklahoma specifically to ensure that Stacy was not restricted from seeing Eliana, and Defendant Carreno voiced his agreement to Plaintiff on terms of a permanent protective order that would allow for Stacy to have parenting

time with Eliana even though the child was principally in Plaintiff's possession, care and control in Oklahoma.

31. Shortly after Defendant Judge Greenblatt called Stacy's case on October 13, 2017, Plaintiff was excused from participation on the record due to a request for a 402 pretrial conference to resolve the case against Stacy on agreed terms, and Plaintiff left the courtroom to return to Oklahoma.

32. Before Plaintiff left the courtroom, however, Plaintiff heard Defendant Gao say to Defendant Cosley from the gallery that she would pay a million dollars to "each of you" (pointing to Defendants Cosley, Carreno, and Judge Greenblatt) if they would provide an order to give Eliana to Defendant Gao.

33. At that time, Defendant Carreno, who heard Defendant Gao's statement, approached Defendants Gao and Cosley as Defendant Judge Greenblatt proceeded off the bench to go into a side room to hold the 402 conference, and Defendant Gao then said, "make it two million for each of you," (again pointing to Defendants Cosley, Carreno, and Judge Greenblatt). Before Defendant Judge Greenblatt entered the side room, Defendant Carreno ran up to the judge and whispered something to him, after which the judge's eyes lit up.

34. Plaintiff then asked whether he could participate in the 402 conference to confirm that the terms agreed with Defendant Carreno for parenting time would be honored, to which Defendant Cosley told him no. Plaintiff then asked Defendant Judge

Greenblatt if he could go into the 402 conference, and the judge responded that Plaintiff could not participate since he was not a party.

35. After Plaintiff left the courtroom, however, Defendants Carreno, Cosley and Judge Greenblatt participated in a 402 pretrial conference on Stacy's domestic violence charge that resulted in Defendant Judge Greenblatt issuing an order against Plaintiff to turn over Eliana to Defendant Gao's care by the following Monday, October 16, 2017, by 9:00 a.m. That order was void *ab initio* for lack of subject matter jurisdiction.

36. Later that afternoon on October 13, 2017, Stacy's domestic violence case was recalled and on information and belief Defendant Judge Greenblatt made statements as though Plaintiff was the client of a police social worker named Eva Jasinska (who is not an attorney), and claimed that Plaintiff would receive the child-turnover order from Ms. Jasinska.

37. Rather than perform the 402 conference to properly resolve Stacy's domestic violence case, Defendants Carreno, Cosley, Gao and Judge Greenblatt instead conspired among themselves and with others to deprive Plaintiff of his constitutional rights. Specifically, the Defendants used a domestic violence case in which the Plaintiff was a complainant, and then affirmatively endeavored to stretch and manipulate that case to achieve a child placement result in favor of Defendant Gao without proper jurisdiction.

38.  Defendants further violated Plaintiff's rights by contributing to sworn reports, complaints and warrants by various law enforcement agents containing materially false "facts" (*e.g.,* claiming that Plaintiff attended a child placement hearing in Hoffman Estates, Illinois, on October 16, 2017, when in fact Plaintiff was in Oklahoma on that date requesting an order of protection against Defendant Gao; and claiming that Plaintiff "saw the way the case was going and decided to leave with the child against the Judge's wishes" when he was excused on the record and did not have Eliana with him).

39.  Documents supported by Defendants' false statements or otherwise were then used to unlawfully arrest, detain and convict the Plaintiff.

40.  On November 1, 2017, Defendant Jason Poje approved a felony arrest warrant of Plaintiff despite his colleague's valid denial of approval on prior days in order to review the October 13, 2017, transcript to confirm that Plaintiff was aware of a court order to turn over Eliana to Defendant Gao. Defendant Judge Greenblatt later signed the arrest warrant.

41.  Plaintiff did not participate in any child placement hearing, and no such hearing was held before Defendant Judge Greenblatt in any event, as Defendant Judge Greenblatt did not and does not preside in the domestic relations division.

42.  On October 16, 2017, Plaintiff completed his petition for a protective order against Defendant Gao in Pottawatomie County,

OK, and filed it the next day, and mailed the Order and Notice of Hearing to Defendant Gao on October 17, 2017. The Pottawatomie County, OK hearing on the requested protective order against Defendant Gao was scheduled for November 8, 2017.

43. Plaintiff was not able to make that Pottawatomie County hearing on his requested protective order, though, because Plaintiff was arrested the day before by US Marshals on November 7, 2017, and jailed at the Pottawatomie County Safety Center ("PCSC").

44. Plaintiff *never received* the October 13, 2017 Order stating that he was to turn over Eliana to Defendant Gao until after being arrested and jailed in Oklahoma for failure to do so.

45. Plaintiff was held at the PCSC until extradited by governor's warrant on February 5, 2018, and released to the custody of Detective Tenuto with the Hoffman Estates Police Department.

## Plaintiff's Faulty Prosecution

46. Following an overnight in jail at the Hoffman Estates Police Department, Plaintiff was taken on February 6, 2018, for a bond hearing on a Class 4 felony charge of child abduction[1]

---

[1] 720 ILCS 5/10-5(b)(3)(A):
(b) A person commits the offense of child abduction when he or she does any one of the following:
::
        (3) Intentionally conceals, detains, or removes the child without the consent of the mother or lawful custodian of the child if the person is a putative father and either: (A) the paternity of the child has not been legally established….

even though Plaintiff was charged with her sole physical care and possession at that time. Plaintiff was released on a $50,000 I-bond with electronic home monitoring with movement granted only for medical purposes.

47. A superseding indictment was filed against Plaintiff in March 2018 on a Class 2 felony charge of kidnapping[2] and Plaintiff was allowed movements during the daytime hours to work, though Plaintiff did not seek employment due to having an outstanding felony charge against him.

48. Defendant Palac deliberately and affirmatively failed to investigate and present information which would have helped to rebut Plaintiff's guilt of the charged offenses.

49. With Plaintiff's paternity of Eliana having been legally established, and as the primary parent with the physical possession of Eliana while Stacy's domestic violence charge was pending (and a void order granting custody of Eliana to Defendant Gao), Plaintiff was not guilty of the charged offenses of child abduction or kidnapping.

50. On April 5, 2018, to have the painful monitoring device removed, be able to seek work without a pending felony charge,

---

[2] 720 ILCS 5/10-1(a)(1):
(a) A person commits the offense of kidnapping when he or she knowingly:
    (1) and secretly confines another against his or her will….

(b) Confinement of a child under the age of 13 years … is against that child's or person's will within the meaning of this Section if that confinement is without the consent of that child's or person's parent or legal guardian.

and because Defendant Palac urged and advised Plaintiff that he would have 30 days to undo or revoke any  conviction, Plaintiff pled guilty following a 402 conference to Class A misdemeanor attempted child abduction of his daughter, Eliana.

51.  As a proximate result of the Defendants' misconduct described above, Plaintiff was wrongfully convicted. He was placed on two years' probation, with fines and fees of $324; in addition, he was ordered to complete a mental health evaluation, parenting classes, and have no contact with his beloved daughter, Eliana.

52.  As a proximate result of the above-described misconduct on the part of the Defendants, Plaintiff would have been neither prosecuted nor convicted.

53.  Following his conviction, Plaintiff contacted Defendant Palac to take the necessary steps within 30 days to vacate the conviction and she declined to help him and said it was too late.

54.  Plaintiff then contacted the public defender's office, and was told that since Plaintiff had an attorney of record, they were precluded from providing any assistance to him.  Plaintiff did not know of any other avenues for relief, so Plaintiff turned his attention to the parenting matters that had been filed by Stacy in October 2017, when Plaintiff was in Oklahoma.

55.  While Plaintiff was incarcerated in Oklahoma, an order of protection had been entered against him by default in January

2018, and Stacy was proceeding to in the domestic relations division of Cook County Circuit Court to have all parental responsibilities allocated to her.

56.  In March 2018, with charges pending against him for kidnaping, Plaintiff intercepted at the State Department a passport for Eliana that Defendant Gao had requested be issued, claiming fraudulently that the child's passport had been lost or stolen, when in fact the Plaintiff was rightfully in possession of his daughter's original passport, giving credence to Plaintiff's need for an enforceable order of protection against Defendant Gao.

57.  After focusing on resolving the parenting issues between Plaintiff and Stacy, Plaintiff's probation on the attempted child abduction was terminated on March 13, 2020, yet fines of $950 and fees of $324 against him still stand.

## Plaintiff's Damages

58.  At the time he was wrongfully ordered to turn over his daughter to Defendant Gao and then arrested, jailed and convicted of attempted child abduction, Plaintiff was a young first-time father doing his best to protect his familial relationships from interference from Defendant Gao.  He lived with the mother of his child, and he spent much of his time working to ensure that all their needs for food, clothing, shelter and health were met.

14

59.   Defendants' misdeeds have wreaked physical and financial havoc and brought heartache into Plaintiff's life. Defendants improperly caused Plaintiff to be removed from and unable to care for his family and abruptly thrust into an Oklahoma prison system, and then forced to take drastic steps to end his misery and financial crisis.

60.   In serving three months behind bars, Plaintiff was wrongfully deprived of not only his freedom, he was helpless and worried sick about his inability to protect his child from being removed from the country, and the emotional and physical pain and suffering caused during his two months on electronic monitoring were also difficult to bear.

61.   During his wrongful incarceration, Plaintiff was stripped of the various pleasures of basic human experience including his child's growth and development, from the simplest to the most important, which all free people enjoy as a matter of right.  He missed out on his daughter's second birthday in November 2017, the following Christmas holiday, and other life events with his loved ones, as well as the fundamental freedom to live one's life as an autonomous human being during those months.

62.   As a result of the foregoing, Plaintiff has suffered significant damages, all proximately caused by Defendants' misconduct.

## Policies and Practices:
## Prosecutor Interference in Civil OPs

63. The interference of prosecutors in civil orders of
protection for Plaintiff in this case, as well as the subsequent
destruction of transcript evidence of same, was all undertaken
pursuant to, and proximately caused by, a policy and practice on
the part of the Cook County State's Attorney's Office ("SAO").

64. Specifically, at all times relevant hereto, members of the
SAO, including Defendant Carreno in this action, systematically
suppressed protective orders entered against "well-heeled"
respondents like Defendant Gao.

65. Consistent with the prosecutorial policy and practice
described in the preceding paragraphs, Defendant Carreno in this
case advocated on behalf of Defendant Gao to prevent Plaintiff's
protective orders from being heard and proceeding to have any
continuing effect, and manipulated the court reporter(s) to
delete portions of the record to conceal his actions. This
improper advocacy on behalf of Defendant Gao to prevent
Plaintiff and Eliana from having a protective order in place was
undertaken pursuant to the SAO's policy and practice in the
manner described above.

66. The policy and practice described in the foregoing
paragraph was consciously approved at the highest policy-making
level in the SAO, and was a proximate cause of the injuries
suffered here by the Plaintiff.

## Count I -- 42 U.S.C. § 1983

### Due Process

67.  Each of the preceding Paragraphs of this Complaint is incorporated into this Count I as if restated fully herein.

68.  As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to due process and a fair trial.

69.  In the manner described more fully above, the Defendants deliberately withheld exculpatory evidence, as well as fabricated false reports and other evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff.  Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

70.  Defendant Palac's misconduct also directly resulted in the unjust criminal conviction of Plaintiff, thereby denying him his constitutional right to a fair trial, and a fair appeal thereof, in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

71.  As a result of this violation of his constitutional right to a fair trial, Plaintiff suffered injuries, including, but not limited to, emotional distress, as is more fully alleged above.

72.  The misconduct described in this Count I was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

73.  The misconduct described in this Count I was undertaken pursuant to the policy and practice of the Cook County State's Attorney's Office in the manner described more fully above.

## Count II -- 42 U.S.C. § 1983

### False Imprisonment

74.  Each of the preceding Paragraphs of this Complaint is incorporated in this Count II as if restated fully herein.

75.  As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, caused Plaintiff to be falsely imprisoned in violation of his constitutional rights.

76.  As a result of this violation, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

77.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

78.  The misconduct described in this Count was undertaken pursuant to the policy and practice of the SAO in the manner described more fully above.

## Count III -- 42 U.S.C. § 1983

### Coerced Confession

79.  Each of the preceding Paragraphs of this Complaint is incorporated in this Count III as if restated fully herein.

80.  As more fully described above, at the urging of Defendant Palac, a former employee of the SAO, Plaintiff was effectively coerced to plead guilty to a crime he did not commit.

81.  As a result of his guilty plea, Plaintiff suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other consequential damages.

82.  The misconduct described in this Count was undertaken with willfulness and reckless indifference to the rights of Plaintiff.

83.  The misconduct described in this Count was also undertaken pursuant to the policy and practice of the SAO in the manner described more fully above.

## Count IV -- 42 U.S.C. § 1983

### 6th Amendment

84.  Each of the preceding Paragraphs of this Complaint is incorporated into this Count IV as if restated fully herein.

85.  As described more fully above, one or more of the Defendants, all while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, denied Plaintiff his right to counsel in violation of his constitutional rights.

86.  As a result of these violations, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

87.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

88.  The misconduct described in this Count was undertaken pursuant to the policy and practice of the SAO in the manner described more fully above.

### Count V -- 42 U.S.C. § 1983

### Conspiracy to Deprive Constitutional Rights

89.  Each of the preceding Paragraphs of this Complaint is incorporated into this Count V as if restated fully herein.

90.  At the 402 conference in Stacy's domestic violence case, once Plaintiff left the courtroom at the permission of the judge, Defendants Carreno, Cosley, Judge Greenblatt and Gao reached an agreement amongst themselves to enter an illegal and void order and essentially frame Plaintiff for a crime, for which Defendant Poje approved a felony arrest warrant, and to thereby deprive Plaintiff of his constitutional rights, all as described in the various Paragraphs of this Complaint.

91.  In furtherance of the conspiracy, each of the coconspirators committed overt acts and was an otherwise willful participant in joint activity.

92.  As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and he suffered financial damages, as well as severe emotional distress and anguish, as is more fully alleged above.

93.  The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

94.  The misconduct described in this Count was undertaken pursuant to the policy and practice of the SAO in the manner described more fully in preceding paragraphs, and was tacitly ratified by policy-makers for the Cook County State's Attorney's Office with final policymaking authority.

### Count VI -- State Law Claim

### Professional Malpractice

95.  Each of the preceding Paragraphs of this Complaint is incorporated into this Count VI as if restated fully herein.

96.  Defendant Palac caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury to Plaintiff despite his innocence.

97.  As Plaintiff's legal representative in the criminal proceedings against him, Defendant Palac owed Plaintiff a duty of competent representation based on their attorney-client relationship.

98. Defendant Palac breached that duty to Plaintiff by failing to investigate, determine that the factual bases for the charged offenses were based on false statements, and present exculpatory evidence showing that Plaintiff was not guilty, instead Defendant Palac urged and advised Plaintiff to enter a guilty plea.

99. As a result of Defendant Palac's breach of her duty to Plaintiff, Plaintiff sustained, and continues to sustain, emotional and financial injuries.

100. The misconduct described in this Count was undertaken with willfulness, and reckless indifference to the rights of others.

**Count VII -- State Law Claim**

**Civil Conspiracy**

101. Each of the preceding Paragraphs of this Complaint is incorporated into this Count VII as if restated fully herein.

102. As described more fully in the preceding paragraphs, Defendants Carreno, Cosley, Judge Greenblatt, Poje and Gao, acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish an unlawful purpose by unlawful means.

103. In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in joint activity.

104. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

105. As a proximate result of Defendants' conspiracy, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

### Count VIII -- State Law Claim

### Intentional Infliction of Emotional Distress

106. Each of the preceding Paragraphs of this Complaint is incorporated into this Count VIII as if restated fully herein.

107. The acts and conduct of the Defendants as set forth above were extreme and outrageous.  The Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

108. Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

109. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

110.  As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish, as is more fully alleged above.

### Count IX - State Law Claim

### Respondeat Superior

111. Each of the preceding Paragraphs of this Complaint is incorporated into this Count IX as if restated fully herein.

112. In committing the acts alleged in the preceding paragraphs, Defendants Carreno and Poje were members of, and agents of, the Cook County State's Attorney's Office acting at all relevant times within the scope of employment and under color of law.

113. Defendant Kim Foxx, Cook County State's Attorney is liable as principal for all torts committed by her/its agents.

### Count X - State Law Claim

### Indemnification

114. Each of the preceding Paragraphs of this Complaint is incorporated into this Count X as if restated fully herein.

115. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

116. Defendants Carreno and Poje are or were employees of the Cook County State's Attorney's Office, who acted within the scope of his employment in committing the misconduct described herein.

WHEREFORE, Plaintiff, JIMMY CICHOCKI, respectfully requests that this Court enter judgment in his favor and against Defendants JUDGE JOEL L. GREENBLATT, KIMBERLY M. FOXX, Cook

County State's Attorney's Office, ORLANDO CARRENO, DONALD J. COSLEY, LYNN T. PALAC, and SONG GAO, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants in their individual capacities, as well as any other relief this Court deems appropriate.

**JURY DEMAND**

Plaintiff, JIMMY CICHOCKI, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED:

/Phyllis Y. Price/
Attorney for Plaintiff

LAW OFFICE OF PHYLLIS PRICE
30 North Michigan Avenue
Suite 1310
Chicago, IL 60602
(312) 379-0044