## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

JIMMY CICHOCKI,

Plaintiff,

v.

KIMBERLY M. FOXX et al,

Defendants.

Case No. 20-cv-02165

Judge Mary M. Rowland

### MEMORANDUM OPINION AND ORDER

Plaintiff Jimmy Cichocki ("Cichocki") brings this action against Cook County State's Attorney Kimberly M. Foxx, Assistant State's Attorney Orlando Carreno ("ASA Carreno"), Assistant State's Attorney Jason Poje ("ASA Poje"), Cook County Circuit Court Judge Joel L. Greenblatt ("Judge Greenblatt"), private defense attorney Donald J. Cosley ("Cosley"), private defense attorney Lynn T. Palac ("Palac"), and Song Gao ("Gao").[1] Cichocki asserts various federal claims including violation of his right to due process (Count I), false imprisonment (Count II), being forced to make a confession (Count III), being denied his right to counsel under the Sixth Amendment (Count IV), conspiracy to deprive him of his constitutional rights pursuant to 42 U.S.C. § 1983 (Count V), as well as state law claims of Professional Malpractice (Count VI), Civil Conspiracy (Count VII), Intentional Infliction of Emotional Distress (Count VIII), Respondeat Superior (Count IX), and Indemnification (Count X).

---

[1] Although this case was filed on April 6, 2020, according to the docket only Greenblatt, Palac and Gao have been served with the Complaint.

1

He alleges that during a protracted domestic abuse and child custody dispute with the mother of his daughter, Defendants conspired to "deprive [him] of his parental rights and frame him for felony kidnapping and child abduction." (Dkt. 1, ¶ 1). Palac and Judge Greenblatt have each filed a motion to dismiss for failure to state a claim. (Dkts. 15 and 23, respectively). For the reasons set forth below, these motions are granted.

## BACKGROUND

The following factual allegations are taken from the Complaint (Dkt. 1) and are accepted as true for the purposes of ruling on these two motions to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

Cichocki has one daughter with his girlfriend, Stacy Geng ("Geng"). Although Cichocki was his daughter's primary caretake from an early age, Geng's mother, Gao, has repeatedly challenged his parental rights and threatened to take his daughter (her granddaughter) back to her native China. On August 22, 2017, Cichocki was granted a criminal order of protection against Geng after she was arrested and charged for biting him. During the fall of 2017, Cichocki had sole custody of his daughter.

Two days after the criminal order of protection was entered, on August 24, 2017, Cichocki filed for an emergency order of protection against his daughter's grandmother Gao alleging that she had physically abused him. Judge Greenblatt conducted a hearing on August 31, 2017, which Cichocki attended, to determine whether this emergency order of protection should be extended or vacated. Judge

2

Greenblatt vacated the order. Cichocki alleges that ASA Carreno, who had prosecuted the domestic violence charges that resulted in a protective order against Geng, was present at this hearing, "advocated on behalf of Gao," and "requested an Order in that case for Plaintiff to turn over his daughter to [Geng's] mother, [Gao]." (Dkt. 1, ¶¶ 20, 10). Later that same day, August 31, 2017, Cichocki filed and obtained a second emergency order of protection against Gao. This emergency order of protection was scheduled to be reviewed by the court on September 19, 2017. Instead, Gao went to court and had the order terminated in an *ex parte* hearing before Judge Betar (not named in this suit) on September 5, 2017.

Unable to secure a permanent protective order against Gao in Illinois and believing that she was planning to take her granddaughter to China, in early October Cichocki "left the state with [his daughter] and went to Oklahoma [. . .] with the intent to file for a protective order in Oklahoma against [Gao]. (Dkt. 1, ¶ 28). By October 13, 2017, Cichocki had returned to Illinois to attend a hearing about the domestic violence case and associated criminal order of protection against Geng.

Judge Greenblatt conducted Geng's hearing on October 13, 2017. ASA Carreno was prosecuting the charges, and attorney Donald J. Cosley ("Cosley"), also a Defendant in this case, was defending Geng. Cichocki was present as the victim and witness. During the proceedings, he was asked to leave the courtroom so that the judge and attorneys could engage in a pretrial conference pursuant to Illinois Supreme Court Rule 402.[2] Cichocki asked to participate in the pretrial conference but

---

[2] Rule 402 says that "[u]pon request by the defendant and with the agreement of the prosecutor, the trial judge may participate in plea discussions." I.L.R.S.Ct. Rule 402.

3

Cosley and Judge Greenblatt denied the request because he was not a party to the case. Cichocki alleges that before he left the courtroom, he "heard [Gao] say to Cosley from the gallery that she would pay a million dollars" to Cosley, [ASA] Carreno, and Judge Greenblatt "if they would provide an order to give [Cichocki's daughter] to [Gao]." (Dkt. 1, ¶ 32). "Gao then said, 'make it two million for each of you,'" (Dkt. 1, ¶ 33). Cichocki goes on to allege that just before "Judge Greenblatt entered the side room, [ASA] Carreno ran up to the judge and whispered something to him, after which the judge's eyes lit up." *Id.*

According to Cichocki, Judge Greenblatt then issued an order against *Cichocki* to turn over his daughter to Geng's mother, Gao, by the following Monday, October 16, 2017, at 9:00 AM. Cichocki asserts in his Complaint that this order was void for lack of subject matter jurisdiction. Later that afternoon, Geng's domestic violence case was recalled and Judge Greenblatt "made statements as though [Cichocki] was the client of a police social worker named Eva Jasinska (who is not an attorney) and claimed that [Cichocki] would receive the child-turnover order from Ms. Jasinska." (Dkt. 1, ¶ 36).

The Complaint does not clearly describe the events that followed this October 13, 2017 hearing. Cichocki alleges that the Defendants in the instant case *falsely* claimed "that [Cichocki] attended a child placement hearing in Hoffman Estates, Illinois, on October 16, 2017, when in fact [Cichocki] was in Oklahoma on that date requesting an order of protection against Defendant Gao." (Dkt. 1, ¶ 38). Cichocki next says that the Defendants *falsely* claimed he "saw the way the case was going

4

and decided to leave with the child against the Judge's wishes" when in fact he had been "excused on the record and did not have [his daughter] with him." Cichocki did return to Oklahoma after the October 13th hearing "completed his petition for a protective order against [Gao] in Pottawatomie County, OK [on October 16th]". (Dkt. 1, ¶ 42). It is not clear from the record whether he brought his daughter with him to Oklahoma, but neither he nor his daughter were present at the placement hearing in Illinois on October 16th.

Cichocki alleges that the Defendants "unlawfully arrest[ed], detain[ed] and convict[ed]" him. (Dkt. 1, ¶ 39). He further alleges that ASA Poje "approved a felony warrant" and that Judge Greenblatt "later signed the arrest warrant." (Dkt. 1, ¶ 40). On November 7, 2017, Cichocki was arrested by United States Marshals in Oklahoma and jailed in the Pottawatomie County Safety Center. He was extradited to Illinois on February 5, 2018 and charged with child abduction, despite, according to the Complaint, having "sole physical care and possession at that time." (Dkt. 1, ¶ 46). In support of this assertion of custody, Cichocki claims he did not receive the October 13th court order requiring that he turn his daughter over to Gao until he was arrested.

Cichocki's indictment was later amended and he was charged with kidnapping. On April 5, 2018, Cichocki pled guilty to a reduced charge of misdemeanor attempted child abduction. He asserts that he was innocent of this charge, and that his defense attorney, Lynn Palac, "deliberately and affirmatively failed to investigate and present information which would have helped to rebut [his] guilt." (Dkt. 1, ¶ 48). He also

claims that Palac advised him that he would have thirty days to undo or revoke any conviction, but then refused to help him revoke that conviction.

## LEGAL STANDARD

A 12(b)(6) motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

## ANALYSIS

### I. Judge Greenblatt's Motion to Dismiss

The Complaint does not clearly indicate which defendant is named in each Count, but it appears to allege that Judge Greenblatt deprived Cichocki of his procedural due process rights (Count I), falsely imprisoned Cichocki (Count II), conspired to deprive Cichocki of other unenumerated constitutional rights under

§ 1983 (Count V), engaged in state law civil conspiracy (Count VII), and engaged in intentional infliction of emotional distress (Count VIII).

Cichocki's claims against Judge Greenblatt boil down to two allegations: (1) that in a hearing regarding Cichocki's protective order against Geng and the state's domestic violence charges against her, Greenblatt issued a "void" order requiring that Cichocki and Geng turn over their daughter to Gao, and (2) that he signed an arrest warrant for Cichocki when he refused to turn his daughter over to Gao and instead took her across state lines to Oklahoma. The Complaint suggests (but does not outright assert) that Judge Greenblatt took those actions because Gao offered him, in open court and in front of numerous witnesses, first one million dollars and then two million dollars.

Judge Greenblatt argues for the dismissal of these claims based on absolute judicial immunity, the *Heck* doctrine, and sovereign immunity.

### A. Absolute Judicial Immunity

It is well-established that "judges cannot be sued for their judicial acts, even when those acts are "in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Bradley v. Fisher*, 80 U.S. 335, 351 (1871). No matter how "erroneous the act may have been" or how "injurious [. . .] it may have proved to the plaintiff," it cannot support a suit against a judge. *Bradley*, 80 U.S. at 347; *see also Stump v. Sparkman*, 435 U.S. 349, 357–58 (1978) (judge is not deprived of immunity "because the action he took was in error, was done maliciously, or was in excess of his authority"). This is true even when "bad faith is alleged." *Cooney v. Rossiter*, No. 07

7

C 2747, 2008 WL 3889945, at *5 (N.D. Ill. Aug. 20, 2008), aff'd, 583 F.3d 967 (7th Cir. 2009); *see also Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (judge immune from damages in a conspiracy case alleging bribery); *Nesses v. Shepard*, 68 F.3d 1003, 1006 (7th Cir. 1995) (recognizing judicial defendants were entitled to have suit dismissed on grounds of immunity in case alleging "massive, tentacular conspiracy among the lawyers and the judges to engineer" plaintiff's defeat). A judge "will be entitled to absolute judicial immunity if [the judge's] actions meet a two-part test: first, the acts must be within the judge's jurisdiction; second, these acts must be performed in the judge's judicial capacity." *John v. Barron*, 897 F.2d 1387, 1391 (7th Cir.1990).

Cichocki responds to this well-established doctrine by asserting that that Judge Greenblatt is not entitled to absolute judicial immunity because he did not have subject matter jurisdiction. This argument is unavailing.[3] The Illinois Constitution grants Circuit Courts "original jurisdiction of all justiciable matters" with limited exceptions that are not applicable in this case. Ill. Const. Art. VI, § 9. Illinois courts have held that "under the 1970 Illinois Constitution, our court system is now a unified one with original jurisdiction of justiciable matters [and] [t]he allocation of judicial responsibilities to various divisions of a circuit court does not impose barriers to jurisdiction but rather reflects a concern for administrative convenience." *In re Marriage of Devick*, 315 Ill. App. 3d 908, 913, 735 N.E.2d 153, 157

---

[3] Cichocki also argues, without citing any relevant precedent, that Judge Greenblatt should not be entitled to judicial immunity because "where a judicial officer acts in a manner that precludes resort to appellate or other judicial remedies that otherwise would be available, the underlying assumption of the *Bradley* doctrine is inoperative." (Dkt. 26, 3). Because he was not a party to the case in which the turnover order was entered, Cichocki was unable to appeal it. This is not a recognized exception to the doctrine of absolute judicial immunity.

(2000); *see also In re Marriage of Isaacs*, 260 Ill. App. 3d 423, 428 (1994); *Davit v. Davit*, 366 F. Supp. 2d 641, 659 (N.D. Ill. 2004), aff'd, 173 Fed. App'x 515 (7th Cir. 2006). This means that a judge tasked with presiding over a domestic violence case like Geng's does not lack subject matter jurisdiction over child custody decisions. Judge Greenblatt did not lack subject matter jurisdiction, and he is entitled to absolute judicial immunity.

### B. Sovereign Immunity

States and state agencies are immune from suit under the Eleventh Amendment "unless the state consents or Congress abrogates the state's immunity." *Thomas v. Sheahan*, 370 F. Supp. 2d 704, 708 (N.D. Ill. 2005) (citing *Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir. 1992)). "[u]nder the Erie doctrine, state rules of immunity govern actions in federal court alleging violations of state law." *Benning v. Bd. of Regents of Regency Universities*, 928 F.2d 775, 777–78 (7th Cir. 1991) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)); *see also Richman v. Sheahan*, 270 F.3d 430, 441–43 (7th Cir. 2001) ("[S]tate immunity rules apply to [plaintiff's] state law claims in federal court."). Judge Greenblatt argues that state law claims against him are barred by Illinois immunity laws, and Cichocki fails to respond to these arguments. The Court assumes (but, because absolute judicial immunity also applies, need not decide) that Counts VII and VIII should also be dismissed because they are barred by sovereign immunity.

The Complaint against Judge Greenblatt is dismissed with prejudice.

## II. Lynn Palac's Motion to Dismiss

According to the Complaint and to Cichocki's response, Counts I, III, IV, V, VI, VII, and VIII of the Complaint are lodged against Palac. Each of these Counts is discussed in turn, below.

### A. Federal Claims

Palac asks the Court to dismiss four of Cichocki's § 1983 claims: conspiracy to deprive Cichocki of his Fourteenth Amendment due process rights (Count I),[4] forcing Cichocki to plead guilty (Count III), conspiracy to deprive Cichocki of his right to counsel under the Sixth Amendment (Count IV), and conspiracy to deprive Cichocki of other constitutional rights not enumerated (Count V).

To be liable under § 1983, a defendant must have acted "under color of state law" to deprive the plaintiff of a federally guaranteed right. *Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). Actions taken under color of law are those that involve "a misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Honaker v. Smith*, 256 F.3d 477, 484–85 (7th Cir. 2001). Private defense attorneys, and even court-appointed defense attorneys paid by the state (such as public defenders) are not state actors for purposes of § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 321 (1981) (public defender does not act "under color of state law within the meaning of § 1983"); *McDonald v. White*, 465 F. App'x 544, 548 (7th Cir. 2012) ("court-appointed public

---

[4] The Court assumes Cichocki is referring to procedural, rather than substantive, due process in Count I.

10

defender is not a state actor, and thus cannot be sued under 42 U.S.C. § 1983"). Therefore, Count III is dismissed against Palac with prejudice.

A private citizen may be liable under § 1983 under extremely limited circumstances, such as when "the citizen [. . .] conspires with a public employee to deprive a person of his constitutional rights." *Wilson v. Price*, 624 F.3d 389, 394 (7th Cir. 2010) (citing *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002)). The three § 1983 conspiracy Counts, I, IV, and V, might have qualified for this narrow exception had they been supported by sufficient factual allegations. However, no allegations in the Complaint suggest that Palac was engaged in a conspiracy with any state actors. Cichocki does not describe any conversations or interactions between Palac and the other Defendants. He makes only four specific allegations about her conduct, that she: "deliberately and affirmatively failed to investigate and present information which would have helped to rebut Plaintiff's guilt of the charged offenses," (Dkt. 1, ¶ 48), "urged and advised Plaintiff that he would have 30 days to undo or revoke any conviction," (Dkt. 1, ¶ 50), "declined to help him" vacate his conviction, (Dkt. 1, ¶ 53), and "was a former prosecutor with the Cook County State's Attorney's office." (Dkt. 1, ¶ 13). These allegations do not suggest a conspiracy, much less plausibly allege one. Therefore, all claims against Palac brought pursuant to § 1983 are dismissed. She was not acting under color of law or engaged in a conspiracy with any state actors at any time during her representation of Cichocki.

11

### B. State law claims

*1. Malpractice*

Count VI alleges professional malpractice. It states that Palac breached her duty to Cichocki by "caus[ing] [him] to be improperly subjected to judicial proceedings for which there was no probable cause, [. . .] failing to investigate, determine that the factual bases for the charged offenses were based on false statements, and present exculpatory evidence showing that Plaintiff was not guilty, [. . .] urg[ing] and advis[ing] [him] to enter a guilty plea." (Dkt. 1, ¶¶ 96–100).

Palac argues Cichocki has not yet proven his innocence, and therefore cannot bring a malpractice suit. *See Kramer v. Dirksen*, 296 Ill.App.3d 819, 822 (1998) ("under Illinois law a plaintiff must prove his innocence before he may recover for his criminal defense attorney's malpractice"); *see also Winniczek v. Nagelberg*, 394 F.3d 505, 507 (7th Cir. 2005) (collecting Illinois cases).

Cichocki first argues that he has "filed a Petition for Post-Conviction Hearing [. . .] to overturn his guilty plea based on his actual innocence" on March 12, 2020. (Dkt. 21, 3). This is not sufficient. Cichocki has not informed the Court of a favorable judgment in the intervening months. An attempt to prove actual innocence is not a showing of actual innocence. Assuming that petition is still pending, Cichocki "has not yet exhausted his postconviction remedies. Should he succeed in getting his conviction overturned, he can bring a new malpractice suit." *Levine v. Kling*,123 F.3d 580, 582–83 (7th Cir. 1997) (citation omitted).

Cichocki next argues that his circumstances are distinguishable from *Kramer* insofar as he "was not tried [he pled guilty]." (Dkt. 21, 4). This is also unpersuasive. Illinois courts regularly apply the actual innocence rule to malpractice cases in which the criminal defendant pled guilty. *See, e.g., Herrera-Corral v. Hyman*, 408 Ill. App. 3d 672, 675 (2011) (malpractice case dismissed because plaintiff "could not plead and prove that he was actually innocent of the drug conspiracy charge to which he pleaded guilty"); *Paulsen v. Cochran*, 356 Ill. App. 3d 354, 361 (2005) (criminal defendant who pleads guilty "must prove actual innocence in order to sue his attorney for malpractice if the attorney agreed to a penalty that, in the defendant's opinion, was excessive.").

Finally, Cichocki argues that because Palac's actions were "intentional," they fall under an exception to the actual innocence rule described in *Morris v. Margulis*, 307 Ill. App.3d 1024, 1039 (5th Dist. 1999) (rev'ed on other grounds).[5] There the court concluded that the "actual innocence rule will not be applied to situations where an attorney willfully or intentionally breaches the fiduciary duties he owes his criminal defense client." *Id*. at 1039. This case is easily distinguishable, however, because the *Morris* court was "not confronted with a traditional malpractice claim," but rather a breach of fiduciary duty. *Morris*, 307 Ill. App. 3d 1024, 1039. In the criminal case that gave rise to the allegations in *Morris*, Morris and one of his personal attorneys were co-defendants. Morris pointed the finger at his personal attorney, asserting "advice of counsel" as a defense to liability. The law firm that employed that attorney (and had formerly represented the client in personal matters) cooperated by preparing

---

[5] Although *Morris* was reversed, other Illinois decisions have acknowledged that the exception it articulated survives. *See, e.g., Herrera-Corral v. Hyman*, 408 Ill. App. 3d 672, 676 (2011).

cross-examination questions for the prosecutors. This conduct gave rise to the breach of fiduciary duty, not malpractice.

The present Complaint contains no allegations suggesting that Palac worked with the prosecution to harm Cichocki for personal gain. This was a routine criminal matter and Palac was Cichocki's defense attorney. According to the Complaint, her alleged conduct, which amounted to "fail[ing] to investigate and present information which would have helped to rebut [Cichocki's] guilt of the charged offenses," does not approach the level of misconduct exhibited in *Morris*. Because Cichocki has failed to establish his actual innocence to the underlying charge Count VI is dismissed.

   *2. Civil Conspiracy*

Count VII alleges civil conspiracy. Under Illinois law, civil conspiracy requires (1) an agreement between two or more persons for the purpose of accomplishing either an unlawful purpose or a lawful purpose by unlawful means; and (2) at least one tortious act by one of the co-conspirators in furtherance of the agreement that caused an injury to the plaintiff. *See McClure v. Owens Corning Fiberglas Corp.*, 188 Ill.2d 102, (1999). Count VII fails for the same reason Cichocki's § 1983 conspiracy counts failed. The Complaint contains no factual allegations describing Palac's involvement in any conspiracy.[6] More specifically, it does not describe an agreement. The only

---

[6] Cichocki directs the Court's attention to his affidavits, submitted alongside his brief. (Dkt. 21, Exs. A and B). These are equally unavailing. They describe how Palac (1) spoke to a state's attorney in her capacity as Cichocki's attorney, and "did not want to discuss" what they had spoken about, (2) failed to relay Cichocki's complaints about his ankle monitor to the judge, (3) negotiated a deal for Cichocki to avoid a felony, plead guilty to a misdemeanor, and see his daughter, (4) informed Cichocki that if he continued to assert his innocence during the plea colloquia the court would not accept his guilty plea, and (5) refused to assist Cichocki in vacating his plea because he had stopped paying her. (Dkt. 21, Ex. A). None of these allegations suggest a conspiracy.

allegation Cichocki points to in his response brief is that "in furtherance of the conspiracy each of the coconspirators committed overt acts and was an otherwise willful participant in joint activity." (Dkt. 21, 9 citing Dkt. 1, ¶¶ 91, 103). This allegation is a conclusory recitation of the elements of conspiracy, and the Court is not obliged to credit it. *See Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016). Count VII is dismissed.

### 3. Intentional Infliction of Emotional Distress

Count VIII of the Complaint, intentional infliction of emotional distress, is also directed towards Palac. It describes "extreme and outrageous" conduct by "the Defendants" in general terms, saying that "Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress" to Cichocki. (Dkt. 1, ¶¶ 106–10).

Illinois law bars recovery for emotional distress if there is "no accompanying physical impact." *Maere v. Churchill*, 452 N.E.2d 694, 698 (Ill. 1983) (attorneys sued for breach of contract and negligence in rendering legal services could not be sued for emotional distress and mental anguish). Cichocki contends that he qualifies for an exception to the rule articulated in *Maere*, because Palac "willfully, wantonly, recklessly, or intentionally caused the mental anguish." *Id.* at 697. Cichocki also points to *Morris*, which held that damages for mental suffering were recoverable "when an attorney has reason to know that a breach of fiduciary duty is likely to cause emotional distress." *Morris v. Margulis*, 307 Ill. App.3d 1024, 1038 (5th Dist. 1999) (rev'ed on other grounds).

As discussed above, *Morris* is distinguishable. Assuming plaintiffs can recover in circumstances where a lawyer intentionally and knowingly caused emotional distress to their client, Cichocki's Complaint presents no facts supporting the argument that Palac acted in this manner. Therefore, Count VIII is dismissed with prejudice. Palac is dismissed from this action.

## CONCLUSION

The motions to dismiss filed by Lynn Palac and Judge Joel Greenblatt are granted. (Dkts. 15 and 23). Judge Greenblatt is dismissed with prejudice. The federal claims lodged against Palac are dismissed because she is not a state actor and there are no allegations establishing that she conspired with any state actors. Further, the state law claim of malpractice requires Plaintiff to plead his actual innocence. He has failed to do so. As with the federal conspiracy claims, Plaintiff failed to plead any conduct by Palac indicating a conspiracy. Finally, Plaintiff fails to plead intentional infliction of emotional distress since he pleads no physical injury. Palac is dismissed.

E N T E R :

Dated: March 23, 2021

_____
MARY M. ROWLAND
United States District Judge

16