IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JIMMY CICHOCKI, | |
| Plaintiff, | Case No. 20-cv-02165 |
| v. | Judge Mary M. Rowland |
| KIMBERLY M. FOXX, et al., | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jimmy Cichocki brings this action against Cook County State's Attorney Kimberly M. Foxx, Assistant State's Attorney Orlando Carreno, Assistant State's Attorney Jason Poje (collectively, "Prosecutor Defendants"); Cook County Circuit Court Judge Joel L. Greenblatt, private defense attorney Donald J. Cosley, private defense attorney Lynn T. Palac, and Song Gao. Cichocki asserts a total of ten claims stemming from his state court criminal prosecution that arose out of a domestic and child custody dispute in Illinois state court. The Prosecutor Defendants and Defendant Cosley both move to dismiss. For the reasons stated herein, Defendants' Motions to Dismiss [77] [80] are granted. Civil case terminated.

I. **Background**

   *A. Factual Background*

The following factual allegations are taken from the Amended Complaint (Dkt. 68) and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016). The Court also

1

assumes familiarity with the facts of this case from its previous ruling. *Cichocki v. Foxx*, 20-CV-02165, 2021 WL 1103347 (N.D. Ill. Mar. 23, 2021) ("*Cichocki I*").

In November 2015, Cichocki's girlfriend, Stacy Geng, gave birth to their daughter, E.C. [68] ¶ 1. Since E.C.'s birth, Geng's mother, Defendant Gao has challenged Cichocki's parental rights and threatened to take E.C. and Geng to China. *Id.* at ¶¶ 16–18.

In August 2017, Cichocki obtained an emergency order of protection (EOP) against Gao for physically harming him near his daughter. *Id.* at ¶ 19. On August 31, 2017, Cichocki appeared before Defendant Judge Greenblatt to request an extension of the EOP. *Id.* at ¶ 20. Instead, Judge Greenblatt vacated the order of protection. *Id.* Cichocki alleges that ASA Carreno was present at this hearing and "claimed without basis that the EOP could not continue." *Id.* Later that same day, Cichocki obtained a second EOP against Gao because he "continued to believe that [E.C.] was at risk of being removed from the country by Defendant Gao." *Id.* at ¶ 21. Though the emergency order was set for review on September 19, 2017, Defendant Gao had the order terminated in an *ex parte* hearing before Judge Betar (not named in this suit) on September 5, 2017. Because Cichocki feared Gao would remove E.C. to China, Cichocki left the State of Illinois for Oklahoma with his daughter in early October. *Id.* at ¶ 28.

During the time that Cichocki was pursuing an EOP against Gao (E.C.'s grandmother), E.C.'s mother, Geng, was facing criminal domestic violence charges for biting Cickocki. *Id.* at ¶ 22. Judge Greenblatt conducted a hearing in Geng's

2

criminal case on October 13, 2017. ASA Carreno prosecuted the charges and Defendant Cosley represented Geng. *Id.* at ¶ 31. During the proceedings, the parties met to discuss possible resolution pursuant to Illinois Supreme Court Rule 402 which allows for plea discussions between the defendant, prosecutor, and trial judge. Ill. Sup. Ct. R. 402. *Id.* Judge Greenblatt denied Cichocki's request to participate in the Rule 402 conference because he was not a party to the case. *Id.* Cichocki alleges that when leaving the courtroom, he heard Gao say to Cosley (Geng's lawyer) that she would "pay one million dollars to 'each of you' if they would provide an order to have Plaintiff give [E.C.] to defendant Gao." *Id.* at ¶ 32. After the Rule 402 conference, Judge Greenblatt entered an order against Cichocki requiring him to turn E.C. over to Gao's care in the next 72 hours. *Id.* at ¶ 35. Plaintiff believed this order was void for lack of subject matter jurisdiction. *Id.*

Plaintiff alleges that these Defendants conspired together to deprive Cichocki of his constitutional rights during the Rule 402 conference and "affirmatively endeavored to stretch and manipulate that case to achieve a child placement result in favor of Defendant Gao." *Id.* at ¶ 37. Cichocki also alleges that Defendants violated his rights by creating false evidence about another child placement hearing. *Id.* at ¶ 38. This false evidence was used to unlawfully arrest, detain and convict Plaintiff. *Id.* at ¶ 39.

After the Rule 402 conference, Geng's domestic violence case was recalled. Cichocki alleges that during the hearing Judge Greenblatt made statements "as

3

though Plaintiff was the client of a police social worker" and "claimed that Plaintiff would receive the child-turnover order from [the social worker]." *Id.* at ¶ 36.

Although the Complaint is not entirely clear, Cichocki did not turn E.C. over to Gao but, instead returned to Oklahoma with E.C. According to the Complaint, on November 1, 2017, Defendant ASA Jason Poje approved a felony arrest warrant for Cichocki "despite his colleague's valid denial of approval on prior days." *Id.* at ¶ 40. On November 7, 2017, Cichocki was arrested by the United States Marshals Service and jailed at the Pottawatomie County Safety Center. *Id.* at ¶ 45. He was held there until February 7, 2018 when he was extradited to Illinois and released to the Hoffman Estates Police Department. *Id.* at ¶¶ 44–45.

On February 8, 2018, Cichocki appeared at a bond hearing and was informed that he was facing a Class 4 felony charge of child abduction. *Id.* at ¶ 46. Cichocki complains that he was charged with child abduction "even though [he] was charged with [E.C.'s] sole physical care and possession at that time." *Id.* In March 2018, prosecutors filed a superseding indictment, charging Cichocki with Class 2 felony kidnapping. *Id.* at ¶ 47.

On April 5, 2018, Cichocki pled guilty to a Class A misdemeanor of attempted child abduction. According to Cichocki, his counsel, Defendant Palac, failed to "investigate and present information" that would have exculpated him. *Id.* at ¶¶ 48, 50. Cichocki was convicted and placed on probation for two years, assessed a $324 fine, ordered to attend mandatory parenting classes, and required to attend a mental health evaluation. He was also barred him from contacting E.C. *Id.* at ¶ 51.

After his conviction, Cichocki contacted his prior attorney, Defendant Palac, in order to get his conviction overturned. *Id.* at ¶ 53. She declined to assist him. *Id.* On March 13, 2020, Cichocki's probation ended, though he still has outstanding fees and fines totaling more than $1,000. *Id.* at ¶ 57.

Cichocki asserts ten claims but mostly does not indicate which Defendants are named in each count. Dkt. 68. The first five counts are brought pursuant to § 1983 and allege: malicious prosecution (Count I); false imprisonment/wrongful detention before his conviction (Count II); coercion of Plaintiff's confession (Count III); violation of the Sixth Amendment for failing to provide access to his attorney (Count IV); and conspiring to deny him his civil rights in violation of Section 1983 (Count V). The remaining claims are state law claims: Count VI alleges that Palac committed malpractice; Count VII alleges that Defendants conspired against him in violation of Illinois law; Count VIII alleges intentional infliction of emotional distress; and Counts IX and X allege *respondent superior* and indemnification against State's Attorney Kim Foxx.

### B. Procedural Background

Cichocki initiated this suit on March 3, 2020 while represented by an attorney. Dkt. 1. After an initial round of briefing, this Court dismissed Defendants Palac and Judge Greenblatt. *Cichocki I* at 7. Judge Greenblatt was dismissed with prejudice due to absolute immunity. *Id.* The court dismissed the federal claims against Palac, Cichocki's attorney, because she is not a state actor. *Id.* The Court dismissed the remaining state law claims against her for failing to state a claim. At

that time, this Court also noted that Defendants Foxx, Carreno, Poje, and Cosley were not properly served. Dkt. 29. The Court granted Cichocki until April 9, 2021 to properly serve the remaining defendants. *Id.*

Shortly thereafter, Cichocki's attorney filed a motion to withdraw. Dkt. 31. The Court granted the motion and extended the time to serve the Prosecutor Defendants to June 11, 2021. Dkt. 34. On June 14, 2021, Cichocki informed the Court he would proceed *pro se* but was unable to serve the Prosecutor Defendants due to difficulties posed by the pandemic. Dkt. 46. In September 2021, the Prosecutor Defendants appeared. Dkts. 64–68. On September 8, 2021, Plaintiff filed the operative complaint. Dkt. 68.

On October 6, 2021, this Court held a status and set a briefing schedule for motions to dismiss. On October 15, 2021, the Prosecutor Defendants filed the instant motion to dismiss for lack of jurisdiction and failure to state a claim. Dkt. 77. The Court held a status hearing on December 13, 2021. During the hearing, Defendant Cosley requested an extension to file his response due to a filing error. The Court granted that request, giving Cosley until the next day to file his motion. Dkt. 79. At that point Cichocki's response to the Prosecutor Defendants' motion to dismiss was seven days past due. The Court granted Cichocki until January 14, 2022, to respond, which was 90 days from the motion initially being filed. The Court granted Cichocki until February 18, 2022 to respond to Cosley's motion. *Id.* At the

time of this order, Cichocki has not filed a response to either motion. His failure to respond means he has waived any arguments that he could have been made.[1]

## II. Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6) motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

---

[1] *See G & S Holdings LLC v. Cont'l Cas. Co.,* 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate.") (citations omitted); *see also Bonte v. U.S. Bank N.A.,* 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.")

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558, 127 S. Ct. 1955, 1966 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679, 129 S. Ct. 1937, 1950 (2009)). In addition, the Court construes the *pro se* complaint liberally, holding it to a less stringent standard than lawyer-drafted pleadings. *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

"Motions to dismiss under Rule 12(b)(1) are meant to test the sufficiency of the complaint, not to decide the merits of the case," and "[i]n the context of a motion to dismiss for lack of subject matter jurisdiction, [the court] accept[s] as true the well pleaded factual allegations, drawing all reasonable inferences in favor of the plaintiff[.]" *Center for Dermatology & Skin Cancer, Ltd. v. Burwell,* 770 F.3d 586, 588 (7th Cir. 2014). However, "a plaintiff faced with a 12(b)(1) motion to dismiss bears the burden of establishing that the jurisdictional requirements have been met." *Id.* at 588–89.

**III.     Analysis**

    *A. Standing*

The Prosecutor Defendants argue that Cichocki lacks standing to bring his complaint for two reasons: (1) the *Younger v. Harris* abstention doctrine bars his claims given his pending criminal appeal in state court (Dkt. 77 at 5); and (2) the

8

*Rooker-Feldman* doctrine bars his claims because they require this court to evaluate previous decisions in state court, *id.* at 6; *See also* Dkt. 68 at ¶ 3. Cichocki's criminal conviction is pending appeal in state court. Dkt. 77 at 3 (*Clerk of the Circuit Court's Case Summary for 18CR0321401,* pp. 2–3).

Taking these arguments in reverse, the *Rooker-Feldman* doctrine provides that "the Supreme Court of the United States is the only federal court that may review judgments entered by state courts in *civil litigation.*" *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014) (emphasis added); *see generally Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923) (holding that inferior federal courts cannot reexamine the decisions of state tribunals in civil litigation). Because Plaintiff's claims implicate his underlying state criminal case, not a civil case, the *Rooker-Feldman* doctrine is inapplicable here.

On the other hand, the Prosecutor Defendants are correct that Plaintiff's claims trigger the *Younger v. Harris* abstention doctrine. *Younger* "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings" and presents a threshold issue implicating a federal court's subject matter jurisdiction. *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007) (*Younger v. Harris,* 401 U.S. 37, 43–44 (1971)). The doctrine permits state courts to try cases free from federal interference. *Id.* Therefore, *Younger* and its progeny "require federal courts to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an

9

adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances—like bias or harassment—exist which argue against abstention." *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998); *see also Sprint Commc'ns, Inc. v. Jacobs,* 571 U.S. 69, 77 (2013) (holding that criminal proceedings in state court indisputably warrant *Younger* abstention).

Although Cichocki's conviction and state court proceedings ended, *Younger* "continues to apply while state criminal cases go through the appellate process." *Cannon v. Newport*, 572 Fed. Appx. 454, 455 (7th Cir. 2014); *Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir. 1995). Presently, Cichocki's criminal conviction is pending appeal in state court. *See* Dkt. 77 at 3 (*Clerk of the Circuit Court's Case Summary for 18CR0321401,* pp. 2–3).[2]

Many of Cichocki's claims are implicated by *Younger*, and the Court therefore must abstain from exercising jurisdiction over them.[3] Specifically, claims of conspiracy related to a criminal conviction require abstention. *See Cannon,* 572 Fed. App'x at 454 (holding that district court must abstain from hearing a plaintiff's Section 1983 conspiracy claim while his appeal remained pending in state court);

---

[2] "Where, as here, plaintiff's complaint is facially sufficient but external facts call the court's jurisdiction into question, we may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Taylor v. McCament,* 875 F.3d 849, 853 (7th Cir. 2017) (quotation omitted).

[3] The Court acknowledges that exceptions to *Younger* exist. *See Jacobson v. Vill. of Northbrook Mun. Corp.*, 824 F.2d 567, 569–70 (7th Cir. 1987) (citations and internal quotation marks omitted) (holding that courts should not abstain under *Younger* where "(1) the state proceeding is motivated by a desire to harass or is conducted in bad faith; (2) there is an extraordinarily pressing need for immediate equitable relief; or (3) the challenged provision is flagrantly and patently violative of express constitutional prohibitions."). Given that Plaintiff did not respond to the motion, he raises no argument for the application of any of these exceptions. Regardless, the Court finds none applicable based on the facts alleged in this case.

*Boothe v. Sherman*, 66 F. Supp. 3d 1069 (N.D. Ill. 2014) (holding that conspiracy allegations are intimately related to underlying criminal proceeding because a finding in plaintiff's favor would warrant vacating the conviction).

Claims of unlawful detention and false imprisonment also require this Court to abstain under *Younger*. *See Gakuba v. O'Brien,* 711 F.3d 751, 753 (7th Cir. 2013) (holding that the Court must abstain where the plaintiff seeks damages resulting from searches, seizures or detention while there are also ongoing criminal proceedings); *see also Moore v. City of Alton*, 20-CV-00964-SMY, 2020 WL 7059254 at *4 (S.D. Ill. Dec. 2, 2020) (applying the reasoning of *Gabuka* to a detention claim).

The same applies to a Sixth Amendment right to counsel claim. *See Olsson v. Curran,* 328 F. App'x 334, 334 (7th Cir. 2009) (holding that a district court did not err in abstaining from a Sixth Amendment right to counsel claim where the plaintiff was involved in an ongoing criminal proceeding); *Jackson v. Devalkenaere,* 2018 WL 2208360, at *5 (E.D. Wis. May 14, 2018) (finding that *Younger* required abstention when a plaintiff sought damages for a Sixth Amendment right to counsel claim while his criminal appeal remaining pending in state court).

Therefore, under *Younger,* this Court lacks jurisdiction to hear: Count II (unlawful detention/false imprisonment claim); Count IV (Sixth amendment right to counsel claim; Count V (Section 1983 conspiracy claim); and Count VII (state-law conspiracy claim). Although typically courts stay, rather than dismiss, these claims, *see Gabuka*, 711 F.3d at 753, the Seventh Circuit has instructed courts to only stay

11

those claims not otherwise implicated by *Heck v. Humphrey*, which bars a court from hearing civil claims in federal court that may invalidate a conviction. *See Simpson v. Rowan*, 73 F.3d 134, 134 (7th Cir. 1995) (holding that even when *Younger* may apply, the district court should stay cases that *are not* foreclosed by *Heck*); *see also Boothe v. Sherman,* 66 F. Supp. 3d 1069, 1076 (N.D. Ill. 2014) (noting that, although a claim for violation of due process fell under *Younger* and would otherwise by stayed, an analysis of whether the claims should be dismissed for "any other reason" was warranted.); *Wallace v. Kato*, 549 U.S. 384, 393–94 (2007) (holding that if a plaintiff files a "claim relating to rulings that will likely be made in a pending or anticipated criminal trial, it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case. . . . is ended. . . . If the plaintiff is ultimately convicted, and if the stayed civil suit would impugn the conviction, *Heck* will require dismissal; otherwise, the civil action will proceed, absent some other bar to suit."). Therefore, the Court undertakes the necessary analysis of Cichocki's claims under *Heck*.

    B. Heck v. Humphrey

Under *Heck v. Humphrey*, a federal court must consider whether a judgment in favor of the plaintiff would imply the validly of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. 512 U.S. 477, 478 (1994). Since *Heck*, both the Supreme Court and Seventh Circuit have narrowed what claims fall under the doctrine.

*Heck* squarely bars Cichocki's claim of malicious prosecution. Preliminarily, a plaintiff may only bring a malicious prosecution claim under Section 1983 when state law does not provide a way to pursue such a claim. *Newsome v. McCabe*, 256 F.3d 747, 750-51 (7th Cir. 2001). Illinois does recognize a tort claim for malicious prosecution. *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011). However, even if Cichocki brought a state-law malicious prosecution claim, it would be barred by *Heck*.

A judgment in Cichocki's favor on the malicious prosecution claim for withholding and/or fabricating evidence would necessarily imply the invalidity of his conviction because the second element requires the proceeding to have terminated in his favor, which it did not. In *McDonough v. Smith,* 139 S. Ct. 2149, 2158–59 (2019) the Supreme Court held that malicious prosecution claims, including those alleging the use of fabricated evidence, may only be brought after the underlying criminal matter terminates in a person's favor. Until then, "the proper approach in our federal system generally is for a criminal defendant who believes that the criminal proceedings against him rest on knowingly fabricated evidence to defend himself at trial and, if necessary, then to attack any resulting conviction through collateral review proceedings." Therefore, *Heck* bars Cichocki's malicious prosecution claim until his conviction is reversed or otherwise invalidated. *See Heck*, 512 U.S. at 478 (holding that a federal plaintiff pursuing a malicious prosecution claim must first establish that the underlying criminal proceedings terminated in his favor); *Simpson*, 73 F.3d at 135 (holding, without

considering a stay under *Younger*, that a malicious prosecution claim must be dismissed under *Heck*); *McDonough*, 139 S. Ct. at 2156 (collecting cases).

Cichocki's claims for false imprisonment/wrongful detention (Count II), coerced confession (Count III), violation of the Sixth Amendment (Count IV), Section 1983 conspiracy claim (Count V), state law claims of a civil conspiracy (Count VII), and intentional infliction of emotional distress (Count VIII) all face the same hurdle. *See Liebich v. DelGuidice,* 20-CV-2368, 22 WL 8764110 at *6 (N.D. Ill. Mar. 24, 2022) (finding that *Heck* barred a plaintiff's wrongful pretrial detention claim because the claim of wrongful detention would imply the invalidity of an ongoing and prior criminal proceeding) (citing *Sanders v. St. Joseph County,* 806 F. App'x 481, 484 (7th Cir. 2020)); *Taylor v. City of Chicago,* 80 F. Supp. 3d 817, 826–27 (N.D. Ill. 2015) (finding that *Heck* bars any claim of a coerced confession when the plaintiff alleges the confession was used in the criminal proceeding that resulted in a conviction); *Savory v. Cannon,* 947 F.3d 409, 431 (7th Cir. 2020) (holding that claims of a coerced confession, deprivation of a right to a fair trial and malicious prosecution all implicate the underlying criminal conviction and are therefore barred by *Heck*); *Fulton v. Zalatoris,* 07-c-5569, 2008 WL 697349 at * (N.D. Ill. Mar. 12, 2008) (finding that a coerced confession claim must be dismissed under *Heck* when the confession was the primary vehicle for the conviction); *Williams v. Taylor, 18-CV-2933* 2019 WL2357041 at *2–3 (N.D. Ill. June 4, 2019) (finding that *Heck* barred a Sixth Amendment claim based on denial of access to counsel); *See Williams v. Taylor,* 18-cv-2933, 2019 WL 2357041 at *6–7 (N.D. Ill. June 4, 2019) (relying on

a cross-circuit precedent and finding that, although a right to counsel claim was not necessarily barred by *Younger,* it was barred by *Heck* because a successful claim implicates the validity of the underlying conviction.); *Nelson v. Campbell,* 541 U.S. 637, 646–47 (2004) (holding that a Section 1983 suit for damages implying the invalidity of an inmate's conviction is impermissible); *Parish v. City of Elkhart,* 614 F.3d 677, 684 (7th Cir. 2010) (holding that *Heck's* bar on Section 1983 claims applies to state-law claims for intentional infliction of emotional distress because the basis of the IIED claim stems from the arrest and prosecution; if judgment were entered on behalf of the plaintiff on the IIED claim, it would undermine his conviction); *Moore v. City of Chicago*, 19-CV-3902 at *6, (N.D. Ill. June 10, 2020) (finding that while there is an independent cause of action under state law for civil conspiracy, the claim must be brought in line with *Heck* and therefore dismissed until the criminal case results in the plaintiff's favor). Therefore, Counts I–V, VII and VIII are dismissed without prejudice.[4]

Though the Court dismisses Counts I–V, VII and VIII without prejudice under *Heck,* Judge Greenblatt remains dismissed with prejudice due to absolute judicial immunity, as the Court found in its initial opinion. *Cichocki I,* at *7. Further, the Court dismisses Counts IX and X because a plaintiff cannot pursue a claim of *respondent superior* or indemnification without a successful underlying

---

[4] Because the Court dismisses these claims as premature and barred by *Heck*, it declines to evaluate Defendants' remaining arguments based on qualified immunity, absolute immunity, and failure to state a claim. *See Lee v. City of Appleton*, 857 F. App'x 875 876 (7th Cir. 2021) (holding that the district court should not have addressed the merits of the case because the claims were premature under *Heck* and an analysis on the merits could hamper any future review of arguments if the conviction were to be set aside later).

claim. *See Alexander v. City of Danville,* 18-2290, 2022 WL 1321291 at *12 (C.D. Ill. May 3, 2022).

### C. Attorney Malpractice

The Court turns next to Cichocki's remaining claim of attorney malpractice. The Court previously dismissed Cichocki's attorney, Lynn Palac, because Cichocki could not pursue an attorney malpractice claim when he was not proven innocent. Cichocki now realleges the same allegation against Defendant Palac. Nothing in Cichocki's amended complaint changes the Court's initial ruling.

Cichocki alleges that Palac caused him to be "improperly subjected to judicial proceedings" for which "there was no probable case." Dkt. 68 at ¶ 96. Further, Palac owed Cichocki a duty of "competent representation based on their attorney-client relationship" and breached that duty when she, for example, "failed to investigate, determine that the factual bases [sic] for the charged offenses were based on false statements" and instead urged him to enter a guilty plea. *Id.* at ¶¶ 98–99. As a result, Cichocki sustained emotional and financial injuries. *Id.* at ¶ 99.

As this court initially found, a plaintiff in Illinois "must prove his innocence before he may recover for his criminal defense attorney's malpractice." *Cichocki I*, at *7 (citing *Kramer v. Dirksen,* 695 N.E.2d 1288, 1292 (Ill. App. Ct. 1998)); *see also Paulsen v. Cochran,* 826 N.E.2d 526, 530 (Ill. App. Ct. 2005) (finding a defendant must show his conviction had been favorably terminated before he can maintain a

16

malpractice claim against his former attorney). The amended complaint does not allege that Cichocki has proven his innocence.[5]

### D. Donald Cosley and Song Gao

Attorney Donald Cosley and Song Gao[6] are also named defendants. Cosley represented Geng in her criminal matter and prepared the order that led to the Cichocki's improper incarceration. Dkt. 68 at ¶ 12. Gao is grandmother to Cichocki's daughter. *Id.* at ¶ 14. Cichocki accuses each of them of conspiring with the state actors (Judge Greenblatt, ASA Carreno and ASA Poje) to frame him for kidnapping. *Id.* at 30-39 (describing Rule 402 Conference in Geng's criminal case and Cichocki's allegations that defendants used the Rule 402 conference to deny Plaintiff his constitutional rights as follows: (1) Gao offered bribe to Judge Greenblatt and ASAs to have guardianship entered in her favor; (2) after Gao's bribe, defense attorney Cosley requested Rule 402 conference; (3) Cichocki was excluded from the Rule 402 conference but prior to the conference Cichocki told both Cosley and ASA Carreno that he was returning to Oklahoma to be with E.C.; (4) after Rule 402 conference, Judge Greenblatt ordered Cichocki to turn E.C. over to Gao within 72 hours; (5) defendants fabricated evidence against Plaintiff claiming that he attended a child placement hearing on September 16, 2017 and that he fled the jurisdiction—these false statements were used to unlawfully arrest and detain him).

---

[5] Cosley moves to dismiss the legal malpractice claim because he did not represent Cichocki, but acknowledges that "is unclear if this Count is directed at" Cosley. Dkt. 80 at 4. Count VI, the legal malpractice count, specifically names Cichocki's attorney, Lynn Palac, in four of its five paragraphs. Dkt. 68 at ¶¶ 96-99. The Court determines it is lodged against defendant Palac only.

[6] Gao filed a *pro se* answer to the original complaint. Dkt. 8. But because the claims against her are barred by the *Heck* doctrine, the Court addresses them here.

As explained previously, the federal conspiracy and the state conspiracy claim (counts V and VII) are both barred by *Heck v. Humphrey*. *See Moore,* 19-CV-3902 at *6 (state law claim for civil conspiracy must be dismissed until the criminal case results in the plaintiff's favor). The same is true of the IIED claim. (Count VIII). *See Parish,* 614 F.3d at 684 (*Heck* bars claim for intentional infliction of emotional distress). As these are the only claims pending against Cosley and Gao, the matter against each of them is dismissed without prejudice.

### IV. CONCLUSION

For the reasons stated herein, both motions to dismiss are granted. [77] [80]. The Clerk is directed to enter a judgment of dismissal with prejudice as to Judge Joel Greenblatt and a judgment of dismissal without prejudice as to the remaining Defendants. Civil case terminated.

E N T E R:

Dated: July 25, 2022

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

18